IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

S.S., as parent and next friend of L.S.,  )
a minor,                                   )
                                           )
             Plaintiff,              )
                                           )
      v.                               )    Case No. 18-2491-ADM
                                           )
ANTHONY DAVID                              )
NAPOLITANO, et al.,                        )
                                           )
             Defendants.             )

## MEMORANDUM AND ORDER

This matter is before the court on Plaintiff S.S., as parent and next friend of L.S., a minor, and Defendants Megan Napolitano Robe and Marc Robe's Joint Application for Order Approving Minor's Settlement With Defendants Megan Napolitano Robe and Marc Robe (ECF No. 84) and Amended Joint Application for Order Approving Minor's Settlement With Defendants Megan Napolitano Robe and Marc Robe (ECF No. 90). The court held a hearing on the issues raised in these motions on January 15, 2020. For the reasons explained below, the court grants the amended motion to approve the settlement agreement and denies the initial motion as moot.

**I.    BACKGROUND**

Plaintiff S.S. brought this action as parent and next friend of L.S. (ECF No. 1.) Plaintiff's First Amended Complaint (ECF No. 46) alleges that L.S. is a minor and that S.S. is the natural father, guardian, and next friend of L.S. (*Id.* ¶¶ 1, 3.) Defendants Megan Napolitano Robe ("Ms. Robe") and Marc Robe ("Mr. Robe") are L.S.'s aunt and uncle. (*Id.* ¶ 2.) Defendant Anthony David Napolitano ("Anthony") is Ms. Robe's son, Mr. Robe's step-son, and L.S.'s cousin. (*Id.* ¶¶ 7, 76.) Anthony lived with Mr. and Mrs. Robe. (*Id.* ¶ 16.)

1

During the first week of July 2017, L.S. stayed with Mr. and Mrs. Robe. (*Id.* ¶ 11.) Mr. and Mrs. Robe's bedroom was on the first floor of the residence. (*Id.* ¶ 17.) L.S. stayed in a room by herself on the second floor, adjacent to Anthony's room. (*Id.*) On or about the night of July 4, 2017, Anthony sexually assaulted L.S. and threatened her not to tell anyone about it. (*Id.* ¶¶ 18-25.) At the time, L.S. was twelve years old, weighed about ninety pounds, and was about five feet and three inches tall. (*Id.* ¶¶ 26-27.) Anthony was nineteen years old, weighed about 240 pounds, and stood six feet and two inches tall. (*Id.*) L.S. spent much of the next two days in the bathroom, telling Ms. Robe that she was "not well." (*Id.* ¶ 46.) She had to stay with Anthony for the remaining ten days of her visit, and was subjected to Anthony's repeated and ongoing verbal, physical, and sexual abuse. (*Id.* ¶¶ 44-45.)

Before the incident, L.S. was a happy, outgoing, scholastic, athletic, adventurous, and fearless child. (*Id.* ¶ 49.) She was an honor student at her school and had many good friends. (*Id.* ¶ 50.) After the incident, she began to isolate herself, became fearful of crowds, and began seeing a therapist for anxiety and emotional distress. (*Id.* ¶¶ 52, 58, 60.) In October of 2017, she stopped attending school regularly and did not attend school for the rest of the 2017-2018 school year. (*Id.* ¶ 59.) She has been diagnosed with acute Post-Traumatic Stress Disorder, suffers from extreme insomnia and lethargy, and has been repeatedly hospitalized because of concerns about her suicidal thoughts. (*Id.* ¶¶ 61-66.)

Plaintiff's Amended Complaint alleges that Mr. and Mrs. Robe were aware of certain facts about Anthony that made it unreasonable for them to have left L.S. unsupervised in an unlocked room where Anthony could gain access to her overnight. (*Id.* ¶¶ 29-39.) These included the fact that Anthony himself had been sexually molested and had repeatedly exhibited disturbing and misogynistic behavior, yet Mr. and Mrs. Robe never sought therapy or other mental health services

for him. (*Id.*) They were present at the residence when Anthony sexually assaulted L.S., but they did not take any action to prevent, preclude, or limit contact between them. (*Id.* ¶¶ 68-69.) The Amended Complaint alleges that Mr. and Mrs. Robe knew about Anthony's propensity for verbally, physically, and/or sexually abusing a minor like L.S., and therefore they were negligent in supervising L.S. by leaving her alone at their residence, which enabled Anthony to be in a position of power, supervision, control, and authority over L.S., and they failed to use reasonable care to secure her safety. (*Id.* ¶¶ 71-73.)

Based on these allegations, the Amended Complaint asserts claims against Mr. and Mrs. Robe for negligent supervision of a child (L.S.), negligence, and negligent infliction of emotional distress. (*Id.* ¶¶ 74-97.) It also asserts claims against Anthony for assault, battery, false imprisonment, and outrage. (*Id.* ¶¶ 98-118.) However, Anthony has never appeared in this action and is in default. Mr. and Mrs. Robe's answer denies the salient allegations against them. (*See generally* ECF No. 48.)

Mr. and Mrs. Robe have now reached a settlement agreement with Plaintiff. Mr. and Mrs. Robe deny any liability for wrongdoing, but agree to pay Plaintiff a sum of money in compromise of a disputed claim. (ECF No. 93-1.) The settlement requires that amount to be apportioned to: (1) S.S., as custodian for L.S. under the Kansas Uniform Transfers to Minors Act ("UTMA"), and (2) Plaintiff's counsel for attorneys' fees and expenses incurred in representing Plaintiff. (*Id.*) Plaintiff releases all claims against Mr. and Mrs. Robe, but not against Anthony Napolitano or his insurers, including Liberty Mutual Insurance Group, Inc. and LM Insurance Corporation.[1]

---

[1] Plaintiff's counsel represented during the January 15 hearing that Plaintiff intends to preserve these claims.

## II. THE PARTIES' JOINT MOTIONS

Plaintiff and Mr. and Mrs. Robe initially filed a joint motion for approval of the settlement on December 20, 2019. (ECF No. 84.) At the same time, the parties filed a joint motion for leave to file their settlement agreement and a breakdown of the net settlement proceeds—Exhibits A and B to their joint motion for approval of the settlement—under seal. (ECF No. 85.) The court granted the motion for leave to file under seal, and Plaintiff filed the documents under seal on December 30. (*See* ECF Nos. 86-87.)

Prior to the January 15, 2020 hearing, Plaintiff's counsel informed the undersigned's chambers that the initial "whereas" paragraph in the copy of the settlement agreement filed with the court was incorrect. At the settlement approval hearing on January 15, 2020, the court received into evidence a settlement agreement that counsel represented had been corrected. Following the hearing, Plaintiff's counsel informed the undersigned's chambers that the exhibit submitted during the hearing had the wrong page numbers for a confidentiality signature page for Mr. and Mrs. Robe and an attorney's lien waiver signature page. He did not identify any other errors with the document discussed during the hearing. At the court's direction, the parties then filed an amended joint motion for approval of the settlement on January 17, 2020, with the fully corrected settlement agreement attached. (ECF No. 90.) The court granted the parties leave to file the fully corrected settlement agreement and a breakdown of the net settlement proceeds—Exhibits A and B to the amended joint motion for approval of the settlement—under seal. (ECF No. 92.) Plaintiff filed those documents under seal on January 22.

## III. LEGAL STANDARD

Kansas law requires court approval of a settlement contract before it will bind a minor plaintiff. *Childs ex rel. Harvey v. Williams*, 757 P.2d 302, 303 (Kan. 1998) ("Because a minor can

disavow a contract within a reasonable time after reaching majority, it is necessary to reduce a minor's settlement to judgment with court approval to make it binding."). Prior to approving a minor's settlement, the court must conduct a hearing. *See Adkins v. TFI Family Servs., Inc.*, No. 13-2579-DDC-GLR, 2017 WL 4338269, at *3-*4 (D. Kan. Sept. 29, 2017). A hearing is necessary for the court to ensure that the settlement protects the minor's interests. *White v. Allied Mut. Ins. Co.*, 31 P.3d 328, 330 (Kan. Ct. App. 2001).

In evaluating a minor settlement, the court must "exercise extensive oversight, ensuring that the injured minor's claims are not sold short by an agreed settlement merely outlined at a 'friendly' hearing." *Id.* The court "may not simply rely on the fact that the minor's parents have consented to the proposed agreement." *Id.* (quotation omitted). Instead, the court should "judicially examine the facts—to determine whether the agreement [is] reasonable and proper." *Mo. Pac. R.R. Co. v. Lasca*, 99 P. 616, 619 (Kan. 1909). This means engaging in a full examination of the facts and the extent of the minor's injuries. *White*, 31 P.3d at 330.

## III. ANALYSIS

At the settlement approval hearing, the court heard testimony from S.S. He testified that Anthony sexually assaulted L.S. on July 4, 2017, at a residence owned by Mr. and Mrs. Robe. Mr. and Mrs. Robe were aware that Anthony had been sexually abused when he was around the same age as L.S., but they did not provide him with any treatment or counseling to assist him in coping with the assault, nor did they inform L.S.'s parents of the assault. If L.S.'s parents had known this, they would not have entrusted Mr. and Mrs. Robe with caring for L.S. Anthony pleaded guilty to three felonies as a result of his assault of L.S.

S.S. also testified about L.S.'s injuries. Prior to the assault, L.S. was an active and engaged student who excelled academically. She was outgoing, personable, and confident. After the

assault, L.S. was diagnosed with acute Post-Traumatic Stress Disorder, severe depression, and suicidal ideation. She was hospitalized twice at psychiatric hospital. As a result of the treatment she required, she missed 18 months of school. L.S. is no longer able to attend public school. Instead she attends a private school with smaller class sizes that is capable of providing support for her health needs. L.S. receives ongoing and extensive psychiatric care and counseling that S.S. believes will continue for years, if not decades.

The parties mediated this case in September 2019. S.S. testified that he understood if the case survived a dispositive motion and went to trial, L.S. could be awarded more than the settlement amount, less than the settlement amount, or nothing at all. S.S. generally explained to L.S. what a settlement would mean, and what the alternative—proceeding to a jury trial—would entail. For example, S.S. understood that if the case did not settle, L.S. would be required to appear for a deposition and testify at trial. S.S. explained this to L.S., and she did not want to have to go through questioning. L.S.'s medical professionals believed that a jury trial would be traumatic for L.S. The parties entered into a putative settlement at the mediation. S.S. explained that he believes the settlement the parties reached was fair and reasonable because L.S. would be able to avoid testifying and any attempts by Mr. and Mrs. Robe to re-victimize L.S. through their defense. S.S. further explained that the settlement proceeds to L.S. are exceeded by the amount that has been spent on her care to date and will be spent going forward. However, S.S. and his family concluded that continuing to trial would cause L.S. additional pain and suffering, and therefore the settlement was the best option.

<mark>6</mark>

Approximately 48.7% of the settlement proceeds will be placed in an UTMA account with S.S. acting as custodian.[2] Approximately 39.8% and 11.3% of the proceeds are allocated to attorneys' fees and expenses, respectively, pursuant to a contingency fee agreement between S.S. and Plaintiff's counsel. S.S. testified that the expenses related to retaining to two expert witnesses. One of those witnesses also performed a medical examination of L.S. for her expert report. S.S. believes that terms of the settlement, including the allocation of the settlement proceeds are fair and reasonable.

S.S. testified that he understands his responsibilities as custodian of the UTMA account. He confirmed that the funds in the UTMA account will be used solely for L.S. for expenses relating to or arising out of the assault and any resulting emotional distress or psychological trauma. S.S. further testified that he currently has the means to pay for the care L.S. has required as a result of the assault and intends to use the UTMA funds only as a last resort. The UTMA funds will be transferred to L.S. outright when she reaches 18 years of age.

The court concludes that the putative settlement is "in the minor's best interests." *White*, 31 P.3d at 330. The settlement allows L.S. to avoid testifying at a deposition and at trial, which would potentially cause her further trauma, while still providing her with some compensation for the injuries she suffered. The proposed settlement agreement appropriately protects the settlement funds for the use and benefit of L.S. during her minority, and L.S. will have full access to the funds at age 18. The court finds that S.S.—whose testimony was very credible—is an appropriate

---

[2] The court has omitted references to the gross settlement amounts in this order. The court finds that the interest served by preserving the specific results of confidential settlement negotiations here outweighs the public interest in access to the settlement agreement. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (explaining that while the public has a "general right to inspect and copy public records and documents," the right is not absolute).

custodian for the UTMA account. The court also finds that the attorneys' fees and expenses are fair and reasonable under the circumstances.

The court approves the proposed settlement. Consistent with the terms of the parties' settlement agreement, the court orders that the settlement proceeds payable to S.S. as custodian for L.S. be placed into a custodial account subject to the Kansas UTMA, Kan. Stat. Ann. § 38-1701, *et seq*. S.S. as custodian shall use the funds in the account solely for L.S. for expenses relating to or arising out of the assault and any resulting emotional distress or psychological trauma. The court further orders that S.S. shall transfer the remaining proceeds to L.S. when she attains the age of 18, pursuant to Kan. Stat. Ann. § 38-1721.

**IT IS THEREFORE ORDERED** that Plaintiff S.S., as parent and next friend of L.S., a minor, and Defendants Megan Napolitano Robe and Marc Robe's Amended Joint Application for Order Approving Minor's Settlement With Defendants Megan Napolitano Robe and Marc Robe (ECF No. 90) is granted.

**IT IS FURTHER ORDERED** that Plaintiff S.S., as parent and next friend of L.S., a minor, and Defendants Megan Napolitano Robe and Marc Robe's Joint Application for Order Approving Minor's Settlement With Defendants Megan Napolitano Robe and Marc Robe (ECF No. 84) is denied as moot.

**IT IS SO ORDERED.**

Dated January 30, 2020, at Topeka, Kansas.

              s/ Angel D. Mitchell
              Angel D. Mitchell
              U.S. Magistrate Judge